IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| W.R. BERKLEY CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-CV-00032-GMS |
| | ) | |
| JASON R. NIEMELA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM

**I. INTRODUCTION**

On January 11, 2017, plaintiff, W.R. Berkley Corporation ("Berkley"), initiated the instant action against Jason R. Niemela ("Niemela"). (D.I. 1.) Berkley seeks to enforce the express terms of restricted stock unit agreements with Niemela. (*Id.* ¶ 1.) Presently before the court is Niemela's Motion to Transfer this action to the Central District of California pursuant to 28 U.S.C. § 1404(a), (D.I. 7.) For the reasons that follow, the court will deny Niemela's Motion to Transfer.

**II. BACKGROUND**

As described in the Complaint and the parties' briefing, Berkley is a property and casualty insurance holding company incorporated under the laws of Delaware with its principal place of business in Greenwich Connecticut. (D.I. 1, ¶ 2.) Berkley operates in two segments of the insurance business: insurance and reinsurance. (*Id.*) One operating unit of Berkley's subsidiaries is Berkley Aviation. (*Id.*) Berkley Aviation hired Niemela in 2005 as its President. (D.I. 1, ¶ 8.) Niemela resides in Santa Barbara, California. (D.I. 1, ¶ 3.) Between January 9, 2006 and July 19, 2010 Niemela entered into three Restricted Stock Unit Agreements ("RSUs") with Berkley in exchange for shares of stock. (D.I. 1, ¶ 12-14.) Around January 1, 2011, Niemela entered into the

LTIP Agreement with Berkley and received $297,930.00 in cash. (D.I. 1, ¶ 16.) The RSUs provide that if Niemela breaches, the RSUs shall be construed and interpreted in accordance with the laws of the State of Delaware, without regard to principles of conflicts of law thereof. Similarly, the LTIP shall be construed and interpreted in accordance with the laws of the State of Delaware, excluding any conflicts and choice of law rules or principles. (*Id.* at ¶ 17, 20-21.)

## III. STANDARD OF REVIEW

Under 28 U.S.C. § 1404(a), a district court has "broad discretion to determine, on an individualized, case-by-case basis, whether the convenience and fairness considerations weigh in favor of transfer."[1] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). The court engages in a two-step inquiry. It first determines whether the action could have been brought originally in the proposed transferee forum and then asks whether transfer would best serve the convenience of the parties and witnesses as well as the interests of justice. *Smart Audio Techs., LLC v. Apple, Inc.*, No. 12-134-GMS, 2012 WL 5685742, at *1 (D. Del. Nov. 16, 2012). It is the defendant's responsibility to demonstrate that transfer is appropriate at each step, *Jumara*, 55 F.3d at 879-80, and, "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970); *see also Smart Audio Techs.*, 2012 WL 5865742, at *3.

Where contracting parties have specified a forum in which they will litigate all disputes arising from their contract, "federal courts must honor the forum-selection clause '[i]n all but the most unusual cases." *In re: Howmedica Osteonics Corp*, No. 16-3682, 2017 WL 3482039, at *1

---

[1] The statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

(3d Cir. Aug. 15, 2017) (citing *Atl. Marine Construction Co. v. U.S. District Court*, — U.S. —, 134 S.Ct. 568, 583 (2013)).

## IV. DISCUSSION

The court may only transfer an action to a "district or division where it might have been brought." 28 U.S.C. § 1404(a). The parties do not dispute that the plaintiffs' lawsuit could have originally been filed in the Central District of California. As such, the court presumes venue there would be proper and proceeds to the second step.

### a. *Jumara* Analysis

The court next must consider whether transfer to the Central District of California would serve the interests of convenience and justice. In the Third Circuit, this requires an individualized analysis, considering the various private and public interests guarded by § 1404(a). *See Jumara*, 55 F.3d at 879. To this end, the court does not apply any "definitive formula" but, instead, considers each of these "*Jumara* factors" on a case-by-case basis. *See id.* The private interests may include:

> plaintiff's forum preference as maintained in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* The public interests may include:

> the enforceability of the judgment: practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

3

*Id.* at 879–80. The court will address each of the disputed *Jumara* factors in turn.

1. **Private Interest Factors**

   a. *Plaintiff's Forum Preference*

Perhaps the most significant factor in the transfer analysis is the "plaintiff's forum preference as manifested in the original choice." *Jumara*, 55 F.3d at 879. The court generally accords this preference substantial weight. *See, e.g., Shutte*, 431 F.2d at 25; *Smart Audio Techs.*, 2012 WL 5865742, at *6; *Mimm v. Vanguard Dealer Servs.*, LLC, No. 11–736–GMS, 2012 WL 4963315, at *6 (D. Del. Oct.16, 2012). The court has long recognized, however, that this choice is not dispositive and that it may be entitled to less deference in certain situations. *Smart Audio Techs.*, 2012 WL 5865742, at *6.

Niemela contends that, while a corporation's place of incorporation is part of its "home turf," Berkley's choice of forum is entitled to little weight because Delaware is not the physical location of the plaintiff or witnesses. (D.I. 8 at 8.) Niemela argues that Berkley is physically located in Connecticut and has no real presence in Delaware aside from place of incorporation. (D.I. 8 at 9.)

Berkley contends that its choice to file this lawsuit in Delaware is entitled to maximum deference. (D.I. 11.) Specifically, Berkley points to the fact that the need for witnesses is limited because the narrow scope of review in this case is provided under the Agreements. (D.I. 11 at 10.) Berkley further argues that it is incorporated in Delaware and most of the Committee members of the company live on the east coast. (*Id.*)

Berkley is correct that "a plaintiff's choice of a proper forum is a paramount consideration . . . and should not be lightly disturbed." *See Shutte*, 431 F.2d at 25. But this general statement is not without exceptions. In particular, the court will afford "something less than

maximum deference" to the plaintiff's chosen forum where the plaintiff is not truly at home in the forum state. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011). Moreover, while a company's situs of incorporation or organization will often correspond to its "home turf," *see Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 759 (D. Del. 2012), the court must examine closely the facts of each "to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation." *See In re Microsoft Corp*, 630 F.3d 1361, 1364 (Fed. Cir. 2011).

The court agrees with Niemela that Berkley's forum choice should not be afforded maximum deference. Even though Berkley Corporation is organized under Delaware law, its principal place of business being in Connecticut diminishes the plaintiffs' argument that it is at home in Delaware. Thus, this factor weighs in favor of transfer.

### b. *Defendant's Forum Preference*

The next private interest factor to consider is Niemela's forum preference. *See Jumara*, 55 F.3d at 879. In this case, Niemela clearly prefers to litigate in the Central District of California, the District where Niemela resides. This factor weighs in favor of transfer, albeit very slightly given the forum selection clause, which reflects Niemela's own willingness to litigate in Delaware.

### c. *Whether the Claims Arose Elsewhere*

*Jumara* next instructs courts to consider "whether the claims arose elsewhere." *Jumara*, 55 F.3d at 879. Berkley raises breach of contract claims in this suit for violations of the RSUs and the LTIP agreement. (D.I. 1 at 5.) All require the court to interpret the RSU and LTIP agreements, by their own terms. The RSUs and LTIP agreements provide that they "shall be construed and interpreted in accordance with the Laws of the State of Delaware without regard to the principles of conflicts of law thereof." (D.I. 1, Ex. 1.) Berkley contends that this contract action should be

viewed as arising in Delaware, where by virtue of each agreement's forum selection clause, the parties have agreed to litigate. The court agrees. This factor weighs against transfer.

### d. *Convenience of the Parties*

The fourth private interest factor is the "convenience of the parties as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 879. In assessing this factor, the court accounts for "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Mitek Sys., Inc., v. United Servs. Auto. Ass'n*, No. 12-462-GMS, 2012 WL 3777423, at *6 (quoting *Fuisz Pharma v. Theranos*, 2012 WL 1820642, at *12 (D. Del. May 18, 2012).

Niemela, a California resident, argues that this factor counsels against transfer, as travel costs for Berkley "would be more easily absorbed by the publicly-traded entity than by" Niemela. (D.I. 8.) Berkley contends that Niemela was a highly paid executive at Berkley Aviation who "chose to resign to start his own company," and that cost of litigation is not the issue here. (D.I. 11 at 15.) The relevant questions are whether Niemela would face additional difficulty if forced to litigate in Delaware and whether he would be better able to bear those costs than Berkley.

Though Berkley is an incorporated entity and Niemela an individual litigant who resides in California, it is not clear to the court that Niemela would be unduly burdened by the travel time associated with defending this action in Delaware. The court views this factor as neutral.

### e. *Convenience of the Witnesses*

The court next considers "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. The

6

court only grants this factor weight when there is reason to believe that a potential witness will decline to appear in one forum absent a subpoena. *See Smart Audio Techs.*, 2012 WL 5865742, at *8; *AIP Acquisition LLC v. iBasis, Inc.*, 12–616–GMS, 2012 WL 5199118, at *5 n. 6 (D. Del. Oct.19, 2012); *Acuity Brands, Inc. v. Cooper Indus., Inc.*, No. 07–444–GMS, 2008 WL 2977464, at *2 (D. Del. July 31, 2008).

Though Niemela states that the "non-party witnesses are California residents," he does not identify any of these potential witnesses or suggest that they would refuse to testify in Delaware. (D.I. 8 at 11.) Berkley argues that the "contract claims in this case do not involve complicated questions of fact" and that the "relevancy of non-party witness[]" testimony is questionable. (D.I. 11 at 16.) Accordingly, the court finds that this factor is neutral.

### f. *Location of Books and Records*

The final private interest factor is "the location of books and records" that might prove relevant to this action. *Jumara*, 55 F.3d at 879. Here both parties agree that the location of the books and records is neutral because most of the documents can be made available electronically. (D.I. 11 at 17; 8 at 11.)

### 2. **Public Interest Factors**

There is no dispute between the parties over the enforceability of the judgment. As such, the court excludes this factor from its analysis and considers it neutral.

### a. *Practical Considerations*

*Jumara* instructs that courts should look to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. Niemela provides substantially the same arguments offered in support of its position on the private "convenience of the parties" factor. (D.I. 11.) Berkley counters that Niemela's arguments should be disregarded because witnesses in

7

California can be counterbalanced with Committee members located in Connecticut. Because neither party addresses the broader public costs of proceeding in one district or the other, the court finds this factor to be neutral.

      b. *Court Congestion*

The court also considers the "relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. Niemela cites Federal Judicial Caseload Statistics to show that the District of Delaware is slightly more congested than the Central District of California. (D.I. 8 at 14.)[2] According to the most recent statistics cited by Niemela, the District of Delaware has 472 pending cases per judgeship, while the Central District of California had 453 pending cases per judgeship. (*Id.*) Regarding time from filing to disposition, the District of Delaware is 9.9 months compared to 4.9 months for the Central District of California. (*Id.*) For time from filing to trial, Delaware is 24.5 months compared to 20.5 months for the Central District of California. (*Id.*) Niemela argues that these statistics establish that the District of Delaware is more congested, resulting in increased administrative difficulty.

Berkley characterizes the difference in disposition time between districts as "irrelevant." (D.I. 11 at 11.) Moreover, Berkley argues that this is the only pending action between the parties so maintaining the case in Delaware poses no risk of duplicative discovery, reduced judicial efficiencies, or conflicting rulings. (*Id.*)

This District's large caseload has not, in the past, been a sufficient justification for transfer. *See Intellectual Ventures*, 842 F. Supp. 2d at 759–60; *Human Genome Sci., Inc. v. Genentech*, No. 11-082-LPS, 2011 WL 2911797, at *10 (D. Del. July 18, 2011). However, increased times from filing to disposition and trial are important factors that do influence the court's calculus. As

---

[2] U.S. COURTS, UNITED STATES DISTRICT COURTS—NATIONAL JUDICIAL CASELOAD PROFILE, 14, 68 (Sept. 30, 2016), http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2016.pdf.

demonstrated by the Federal Judicial Caseload Statistics, the District of Delaware's docket has changed substantially in recent years. However, the docket in the Central District of California is similar. The court finds this factor to be neutral.

### c. *Local Interest in the Litigation*

The transfer analysis requires that the court examine "any local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879.[3] Niemela argues that the Central District of California has an interest in resolving the case because it is better situated to "consider relevant public policy issues that affect a California resident." (D.I. 8 at 15.) More specifically, Niemela claims that Delaware "has no relevant ties to this dispute" and that "California has a strong, and codified, public policy in ensuring that its citizens are not burdened by unlawful restrictive covenants." (D.I. 8 at 14.) Berkley rejects Niemela's argument and points out that both parties agree the court would need to apply Delaware law. (D.I. 11 at 12; 8 at 15.) Berkley further contends that the District of Delaware is capable of considering any relevant public policy issues related to California, and that public policy is "not enough to warrant overriding the agreed forum selection clause." (D.I. 11 at 12.)

The court agrees with Berkley. A district does not have a local interest in resolving litigation simply by virtue of having one of the parties present there. To hold otherwise would be to give undue weight to the location of the parties, which has already been accounted for in the private interest factors analysis. The mere potential interest California may have in this action is not enough to warrant overriding the agreed to forum selection clause.[4] *Partners of Mass.*, 2016

---

[3] The court must consider the "public policies of the fora" in weighting the propriety of transfer. *Jumara*, 55 F.3d at 879. Both parties, however, have conflated the public policy argument incorrectly by combining the public policy and local interest factors. The court will addresses the public policy factor in its local interest factor analysis.

[4] California does not have a public policy interest at all at this stage in the proceedings because there is no indication that the restrictive covenant is unenforceable at this time.

WL 7476355, at *4-5 (finding defendant did not "meet his burden of showing that the public interest factors compel the court to disregard the parties' bargained-for venue," since "[i]n all but the most unusual cases . . . the 'interest of justice' is served by holding parties to their bargain.") (quoting *Atl. Marine*, 134 S. Ct. at 583)); *Meras Engineering, Inc. v. CH2O, Inc.*, 2013 WL 146341, at *15 (N.D. Cal. Jan. 14, 2013) (plaintiffs did not meet "heavy burden" to prove forum selection clause designating Washington was unenforceable under California's public policy). This is particularly true where parties have expressly agreed to a chosen forum. Moreover, Niemela has not suggested that the circumstances in this case involve issues of particular concern to California. Therefore, the court finds the "local interest" factor to be neutral.

### 3. Transfer Analysis Summary

Considering the *Jumara* factors as a whole, the court concludes that Niemela has not met his burden of demonstrating that the interests of justice and convenience strongly favor transfer. Only Niemela's forum preference weighs in favor of transfer and, as the court explained above, that preference does not warrant deference in this case. In contrast, several factors counsel in favor of not transferring the case.

## V. CONCLUSION

For the reasons discussed above, the court will DENY Niemela's Motion to Transfer (D.I. 7) this action to the Central District of California pursuant to 28 U.S.C. § 1404(a).

Dated: September 15, 2017

_____
UNITED STATES DISTRICT JUDGE