IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| W.R. BERKLEY CORPORATION, | ) | |
| | ) | |
| Plaintiff/ | ) | |
| Counterclaim-Defendant, | ) | |
| | ) | C.A. No. 17-32 (MN) |
| v. | ) | |
| | ) | |
| JASON R. NIEMELA, | ) | |
| | ) | |
| Defendant/ | ) | |
| Counterclaim-Plaintiff. | ) | |

## **MEMORANDUM OPINION**

Scott A. Holt, Curtis J. Crowther, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE. Counsel for Plaintiff, Counterclaim Defendant.

John A. Sensing, Jesse L. Noa, POTTER ANDERSON & CORROON, LLP, Wilmington, DE. Counsel for Defendant and Counterclaim Plaintiff.

October 24, 2019
Wilmington, Delaware


**NOREIKA, U.S. DISTRICT JUDGE**

This case involves the enforcement of an anti-recruitment covenant, sometimes also called a non-solicitation clause or an anti-raiding clause. Plaintiff W. R. Berkley Corporation ("Berkley") commenced this action against its former employee Defendant Jason Niemela ("Niemela"), seeking to recapture the value of certain stock units previously awarded to Niemela through several Restricted Stock Unit Agreements ("RSU Agreements") and a Long-Term Incentive Program Agreement ("LTIP Agreement," and collectively, the "Agreements"). The Agreements grant Berkley recapture rights if Niemela breaches a covenant not to recruit employees of his former employer Berkley Aviation, which is an operating unit of a Berkley subsidiary.[1] Currently pending before the Court are the parties' cross-motions for summary judgment. (D.I. 87; D.I. 91). The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. For the following reasons, the parties' motions for summary judgment are DENIED.

## I. BACKGROUND

Niemela was employed as President of Berkley Aviation from December 2005 to April 2016. (D.I. 20 ¶ 8; D.I. 92-1, Ex. 15). Berkley Aviation underwrites aviation insurance. (D.I. 112 ¶¶ 2, 8). During his employment, Niemela signed several RSU Agreements and one LTIP Agreement. (D.I. 90 at A219 – A313). Each agreement granted Niemela restricted stock units as employee performance awards and provides that the stock units can be forfeited or recaptured if certain events occur. (*See*, *e.g.*, *Id*. at A230 (§ 3(d))).

Relevant here, the Agreements provided that the value of the stock units can be recaptured if a grantee, such as Niemela, engages in "Competitive Action" within one year of the termination

---

[1] Only Berkley and Niemela are signatories to the Agreements, so Berkley Aviation is a not a party to this action.

of his employment (hereinafter, "recapture rights"). (*See*, *e.g.*, *Id*. at A230, § 3(d)(B)). The definition of Competitive Action includes actions by a grantee, "on behalf of any person or entity engaged in business activities competitive with the business activities of the Company," to "solicit[] or induce[], or in any manner attempt[] to solicit or induce, any person employed by, or as an agent of, the Company to terminate such person's employment with the Company," (hereinafter, "the anti-recruitment covenant"). (*Id*. at A231, § 3(e)(iii)). Pursuant to the Agreements, "[t]he determination of whether the Grantee has engaged in a Competitive Action . . . shall be made by the Committee in its sole and absolute discretion." (*Id*.). The "Committee" refers to the Compensation Committee of the Board of Directors of Berkley. (*Id*. at A229, § 1).

In April 2016, the same month he submitted his resignation letter, Niemela established Air Centurion Insurance Services, LLC ("Air Centurion"). In October 2016, three employees resigned from Berkley Aviation and started working at Air Centurion. (D.I. 112 ¶¶ 13-14). At a meeting on December 20, 2016, the Committee decided that Niemela had engaged in Competitive Action by recruiting the three former employees to work for Air Centurion, which is a business that competes with Berkley Aviation. (*Id*. ¶¶ 41, 46). The Committee further decided that the Company should exercise its rights under the Agreements to recapture the value of the awarded stock units. (D.I. 1 ¶ 31).

Niemela denies that he solicited the three former employees and claims that each of them responded to a Craigslist.com online job advertisement that he posted on September 30, 2016. (D.I. 20 ¶¶ 26, 33). Berkley believes the Craigslist ad was a ruse, because it did not name the hiring company, it did not provide job titles or job descriptions, all three former employees responded to the ad within one day of its posting, and those are the only three employees Niemela

hired at his new company. (D.I. 86 ¶¶ 4-9). On January 11, 2017, Berkley filed this action to enforce its contract rights. (*Id.*).

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must support its assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat

3

an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (internal citations omitted).

## III. DISCUSSION

Each party asks the Court to enter judgment in its favor on Berkley's claim that it has the right, under the Agreements, to recapture the value of the previously awarded stock units, because Niemela breached the anti-recruitment covenants. Before the Court can address the merits of that issue, however, it must first address several threshold issues raised by Niemela, including: (1) whether California or Delaware law governs the Agreements; (2) whether the recapture rights are unenforceable penalties; (3) whether the anti-recruitment covenant applies to employees of Berkley Aviation; and (4) whether the Agreements improperly limit the scope of the Court's authority.

### A. Threshhold Issues

#### 1. Choice of Law

The parties dispute which state's law governs the Agreements. (D.I. 92 at 11-14; D.I. 110 at 8-11; D.I. 113 at 9-11; D.I. 123 at 2-3). Niemela argues that the Agreements are governed by California law, whereas Berkley asserts that Delaware law governs, because each of the Agreements contains a Delaware choice-of-law provision. (*See* D.I. 90 at A224 (§ 18), A236 (§ 18), A246 (§ 18), A261 (§ 19), A279(§ 19), A300 (§ 19), A310 (§ 10(e))). "[I]t is only in rare circumstances that Delaware courts do not honor the choice-of-law provisions agreed to by parties in a binding contract." *Coface Collections N. Am. Inc. v. Newton*, 430 F. A'ppx 162, 166 (3d Cir.

2011). To determine whether a choice-of-law provision will be enforced, Delaware courts apply § 187 of the Restatement (Second) of Conflicts of Laws. *Sensus USA, Inc. v. Franklin*, No. 15-742 (RGA), 2016 WL 1466488, at *2 (D. Del. Apr. 14, 2016). Under § 187, a parties' choice-of-law provision is enforced unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2) (1971).

Niemela invokes the second exception. (D.I. 92 at 11-13). For California law to apply under the second exception, three elements must be met: (i) application of Delaware law must be contrary to a fundamental policy of California; (ii) California must have a materially greater interest than Delaware in the Agreements; and (iii) under the test set forth in § 188 of the Restatement, California law would apply absent the Delaware choice-of-law provisions. *Cabela's LLC v. Highby*, 362 F. Supp. 3d 208, 217 (D. Del. 2019).

On the first element, California does not have a clear public policy against enforcement of anti-recruitment covenants. Section 16600 of the California Business and Professions Code provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." California courts interpreting § 16600, however, have reached conflicting outcomes about whether the statute invalidates anti-recruitment covenants. In *Loral Corp. v. Moyes*, 174 Cal. App. 3d 268 (Cal. 1985), the California Court of Appeals for the Sixth District upheld an anti-recruitment covenant. In *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc*., 239 Cal. Rptr. 3d 577 (Cal. Ct. App. 2018), however, the California

5

Court of Appeals for the Fourth District struck one down. The court in *AMN Healthcare* reasoned that *Loral* was no longer good law after *Edwards*, a decision by the California Supreme Court issued ten years earlier where, as *AMN Healthcare* itself admits, the court "did not address" an anti-recruitment provision.[2] *AMN Healthcare*, 239 Cal. Rptr.3d at 589 (discussing *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 292 (Cal. 2008)). This Court need not determine if *AMN Healthcare* was rightly decided or whether *Loral* is still good law. It is enough to recognize that *AMN Healthcare* and *Loral* were issued by courts sitting at the same appellate level, meaning that there is a split in California authority addressing the validity of anti-recruitment covenants. Accordingly, Niemela has not shown that, under § 187 of the Restatement, application of Delaware law would be contrary to a fundamental policy of California.

As to the second element, Niemela has not shown that California has a materially greater interest than Delaware in the Agreements, particularly given the Third Circuit's holding in *Coface Collections North America Inc. v. Newton*, 430 F. App'x 162 (3d Cir. 2011). In *Coface*, the Third Circuit determined that Louisiana did not have a "materially greater interest" than Delaware in "determining the effect of the non-compete clause" at issue. *Id*. at 168. The Third Circuit acknowledged that the defendant was a Louisiana citizen, he signed the agreement in Louisiana, and his allegedly competing business was headquartered in Louisiana. *Id*. But "these geographical contacts" were insufficient to overcome Delaware's "materially greater interest" when both parties were not Louisiana citizens, plaintiff was a Delaware corporation that operated nationally, and

---

[2] Because *Edwards* did not directly address anti-recruitment covenants or the *Loral* decision, it is not surprising that, after *Edwards*, some California courts continued to uphold anti-recruitment covenants under *Loral*. *See*, *e.g.*, *Gallagher & Co. v. Lang*, No. 14-0909 (CW), 2014 WL 2195062, at *4 (N.D. Cal. May 23, 2014); *Sunbelt Rentals, Inc. v. Victor*, No. 13-4240 (SBA), 2014 WL 492364, at *9 (N.D. Cal. Feb. 5, 2014); *Kindt v. Trango Sys., Inc.*, D062404, 2014 WL 4911796, at *10 (Cal. Ct. App. Oct. 1, 2014).

6

"Delaware ha[d] a substantial interest in enforcing this voluntarily negotiated contract clause that explicitly designate[d] Delaware law to govern." *Id*. (citing *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1049-50 (Del. Ch. 2006)).

Like *Coface*, Niemela resides in California, signed the agreement in California, and headquartered his competing business in California. (*See* D.I. 112 ¶¶ 5-6, 11). But these geographical contacts are insufficient to show that California has a "materially greater interest" than Delaware when this is not a case between California citizens (D.I. 112 ¶¶ 6, 16); Berkley is a Delaware entity, headquartered in Connecticut, that operates throughout the United States, (D.I. 112 ¶ 16; D.I. 113, Ex. 6 ¶ 5); and "[t]he parties voluntarily negotiated the contract clause expressly designating Delaware law to govern any disputes." *Sensus*, 2016 WL 1466488, at *4. "Delaware has a fundamental interest in allowing its citizens to use its law as a commercial lingua franca to transact business across borders." *Id.*[3]

Neither party addressed the final element under § 187(2)(b), which is whether California law would apply under § 188 of the Restatement.[4] Instead, Niemela argues that Berkley waived other non-compete covenants in the same contracts. (*See* D.I. 92 at 13 & 13 n.72; D.I. 124 at 1). Because waiver is not one of the factors under § 188, however, it does not aid the Court's analysis.

---

[3] The Court does not find persuasive *Ascension Insurance Holdings, LLC v. Underwood*, where California's specific interest in prohibiting non-compete provisions was materially greater than Delaware's general interest in the sanctity of contract. C.A. No. 9897-VCG, 2015 WL 356002, at *5 (Del. Ch. Jan. 28, 2015). *Ascension* did not address *Coface* or the Delaware state jurisprudence on which *Coface* relies. In addition, the holding in *Ascension* relied on the fact that all the parties resided in California, whereas here all the parties do not.

[4] Under § 188, a court considers: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 188 (1971).

For the foregoing reasons, Niemela has not shown that California law should apply under § 187 of the Restatement. Accordingly, the Court will enforce the parties' choice-of-law provisions selecting Delaware law.

### 2. Unenforceable Penalties

Niemela argues the recapture rights in the Agreements are unenforceable penalties. (D.I. 92 at 16). Delaware courts distinguish between a liquidated damages clause (which is valid and enforceable) and a penalty (which is void as against public policy). *Delaware Bay Surgical Serv., P.C. v. Swier*, 900 A.2d 646, 650 (Del. 2006). To distinguish between the two, Delaware courts apply a two-prong test. A clause is a valid liquidated damages provision if, at the time of contracting: "(1) the damages are uncertain and (2) the amount agreed upon is reasonable." *Delaware Bay*, 900 A.2d at 651 (quoting *Brazen v. Bell Atlantic Corp.*, 695 A.2d 43, 48 (Del. 1997)). Niemela did not address Delaware's two-prong test or set forth facts in support of either prong. (*See* D.I. 92 at 16-17).

Instead, Niemela argues that the recapture rights are an unreasonable penalty, because Berkley did not sustain any actual damages, and Berkley can recapture the stock units regardless of whether it actually sustains damages. (*Id*. at 16). Under Delaware law, "[i]t matters not whether actual damages are proven, or that the liquidated damages are substantially larger than the actual damages, so long as the liquidated damages were a reasonable estimate of the damages which would be caused." *S.H. Deliveries*, 1997 WL 817883, at *2. Accordingly, Niemela has not shown that Berkley's recapture rights are unenforceable penalties.

### 3. Scope of the Anti-Recruitment Covenant

Niemela contends that the anti-recruitment covenant does not apply to employees of Berkley's subsidiaries such as Berkley Aviation. (D.I. 92 at 17-18). Niemela's interpretation of

8

the Agreements is incorrect. The anti-recruitment covenant states, in relevant part, that the grantee will be deemed to engage in a "Competitive Action" if he "solicits or induces, or in any manner attempts to solicit or induce, any person employed by, or as an agent of, the Company to terminate such person's employment or agency relationship, as the case may be, with the Company." (D.I. 90 at A221, § 3(e)). Section 7(a) sets forth the definition of "Company" as "used in Section 3 *or* otherwise in [the] Agreement with reference to the Grantee's employment" to "include the Company and its subsidiaries." (*Id*. at A222, § 7(a)).

Use of the conjunction "or" indicates that Section 7(a) provides two situations where the term "Company" includes subsidiaries. The first is in the entirety of Section 3. The second is in other sections of the Agreement when in reference to the Grantee's employment. Because the anti-recruitment covenant appears in Section 3, the definition of "Company" in that section includes Berkley's subsidiaries. Therefore, the anti-recruitment covenant applies to the employees of Berkley Aviation.

### 4. Scope of Judicial Review

Niemela argues that the Agreements improperly limit the Court's authority to review the validity of Berkley's actions. (D.I. 113 at 11-15). A determination that Niemela engaged in Competitive Action and that Berkley should exercise its recapture rights is committed, under the Agreements, to the Committee's "sole and absolute discretion." (D.I. 90 at A221, § 3(e)). Under Delaware law, "when a stock option committee is vested with final, binding and conclusive authority to determine a participant's right to receive or retain benefits, that decision made in accordance with the provisions of the agreement will not be second guessed by the Court absent a showing of fraud or bad faith." *W.R. Berkley Corp. v. Hall*, No. Civ. A. 03C-12-146WCC, 2005 WL 406348, at *4 (Del. Super. Ct. Feb. 16, 2005).

9

Contrary to Niemela's assertions, the discretion clause does not improperly limit the Court's subject matter jurisdiction. (D.I. 113 at 12). Indeed, the discretion clause is irrelevant to subject matter jurisdiction, as evidenced by the fact that Berkley itself asserts that the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. (*See* D.I. 1 ¶¶ 4-5). In addition, there is nothing inherently improper, as Niemela suggests, about considering only whether the Committee exercised its authority without fraud or bad faith. (D.I. 113 at 12). If the Agreements had not designated a specific corporate actor as responsible for deciding whether the Company should exercise its recapture rights, then a party testing whether the exercise of those contract rights was proper would have to assert instead a claim for breach of the implied covenant of good faith and fair dealing. Unsurprisingly, Niemela asserts just such a counterclaim. (*See* D.I. 20 at Counterclaims, ¶¶ 36-40). Thus, regardless of whether the Court approaches this issue through Berkley's claim or Niemela's counterclaim, the Court would be "limited," if that is the right word, to evaluating whether the Company exercised its recapture rights in good faith.

Niemela further argues that the discretion clause cannot prevent the Court from determining whether the anti-recruitment covenant is reasonable. (D.I. 113 at 13). Under Delaware law, restrictive covenants, like the anti-recruitment covenant, must be "reasonable in scope and duration," "advance a legitimate economic interest" of the former employer, and "survive a balance of the equities." *Weichert Co. of Penn. v. Young*, C.A. No. 2223-VCL, 2007 WL 4372823, at *3 (Del. Ch. Dec. 7, 2007). Niemela's concerns are misplaced. There is nothing in the plain language of the discretion clause that limits the Court's ability to determine if the anti-recruitment covenant is reasonable, if Niemela chooses to assert such a challenge.[5]

---

[5] The Court did not understand Niemela to be arguing that the anti-recruitment covenant is invalid under Delaware law, because Niemela did not present any facts or analysis, with

## B. The Committee's Exercise of Authority

Niemela contends that the Committee acted in bad faith because (1) Berkley determined that Niemela violated the anti-recruitment covenant well before the Committee ever met; and (2) the Committee made its determination based on inaccurate speculation without the benefit of exculpatory evidence. (D.I. 92 at 19-20; D.I. 124 at 7). In support of his first contention, Niemela claims that: (1) in October 2016, Phillip Welt, an Executive Vice President of Berkley, told Berkley Aviation employees that they were going to "crush" Niemela; (2) also in October 2016, Berkley's General Counsel, Matthew Ricciardi, sent a cease and desist letter to Niemela alleging that breaches had already occurred; and (3) in November 2016, Ricciardi held an off-the-record meeting with the Committee. (D.I. 92 at 19-20). In support of his second contention, Niemela claims that (1) Ricciardi withheld from the Committee Packet "Berkley's own evaluation that the Former Employees were not approached by any third parties"; and (2) the Committee made its determination based solely on the "timing of the Former Employees' applications and the mere use of Craigslist." (*Id.*).

As an initial matter, Niemela has not shown the relevance of some of these facts to a determination of bad faith. For example, Niemela makes no connection between Welt's alleged "crush" him comments to Berkley Aviation employees and the Committee's decision. Indeed, Niemela has presented no evidence showing that Welt was consulted on or involved with the Committee's process or decision.

Moreover, Berkley has raised several genuine disputes regarding the material facts Niemela cited in support of its bad faith argument. (*See*, *e.g.*, D.I. 110 at 17-19; D.I. 123 at 7-9).

---

citations to supporting case law, regarding the scope and duration of the anti-recruitment covenant, the economic interests of Berkley, or the balance of equities.

Those factual disputes prevent the Court from granting summary judgment in Niemela's favor. *See* Fed. R. Civ. P. 56(a); *Matsushita*, 475 U.S. at 586 n.10 (stating that the moving party bears the burden of demonstrating the absence of a genuine issue of material fact). Those same factual disputes also prevent the Court from granting summary judgment in Berkley's favor. Under Delaware law, when a board committee is vested with the sole and absolute discretion to determine an employee's right to receive or retain benefits, that decision will not be second guessed by the Court as long as it was made without fraud or bad faith. *See W.R. Berkley Corp.*, 2005 WL 406348, at *4. While the Court is unable to conclude at this time that the Committee acted *with* bad faith, it also cannot conclude that the Committee acted *without* bad faith. In opposing Berkley's motion for summary judgment, Niemela's has presented more than just bare assertions, conclusory allegations or suspicions. (*See*, *e.g*., D.I. 92 at 19-20; D.I. 113 at 16-20). Accordingly, the Court denies both motions for summary judgement.

## IV.    **CONCLUSION**

For the foregoing reasons, each parties' motion for summary judgment (D.I. 87; D.I. 91) are DENIED. An appropriate order will be entered.